IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| NATIONAL CANCER ASSISTANCE FOUNDATION, INC., a Delaware Corporation, | ) ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-17-777-R |
| NATIONAL COMMMUNITY ADVANCEMENT, INC., a Delaware Corporation, and COURTESY CALL, INC., a Nevada Corporation, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant National Community Advancement, Inc.'s Motion to Dismiss For Lack of Personal Jurisdiction and Improper Venue, or Alternatively, Motion to Transfer Venue, Doc. 6. Plaintiff National Cancer Assistance Foundation, Inc. is a Florida nonprofit suing Defendant National Community Advancement, Inc. ("NCA"), another Florida nonprofit, and Courtesy Call, Inc., a Nevada professional fundraising company, for trademark infringement in violation of the Lanham Act and Oklahoma Deceptive Trade Practices Act. 15 U.S.C. § 1125(a); 78 Okla. Stat. § 32; *see* Doc. 1. Plaintiff alleges that Defendant NCA infringed its "Breast Cancer Assistance Fund" trademark by doing business and fundraising in Oklahoma under that name. Following a nearly six-month window for jurisdictional discovery (Docs. 14, 16), the Court now finds that Plaintiff has failed to show personal jurisdiction over NCA.

The burden falls on Plaintiff to establish personal jurisdiction. *Behagen v. Amateur*

1

*Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984).

> Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Id.* (citations omitted). "[I]n federal question cases" such as this one,[1] "personal jurisdiction flows from the Due Process Clause of the Fifth Amendment." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). In this "specific jurisdiction" context,[2] Plaintiff can show minimum contacts if "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see also Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1130–31 (10th Cir. 1991) (quoting *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415,

---

[1] Plaintiff improperly characterizes this as a "diversity case[]" and cites Oklahoma's long-arm statute. *See* Doc. 8, at 8. The parties are clearly non-diverse, as both Plaintiff and Defendant NCA have their principal place of business in Florida. Doc. 1, at 1–2. The Court agrees with Plaintiff's jurisdictional statement in its complaint that subject matter jurisdiction is present "under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367, because this action arises under the Lanham Act, Title 15 of the United States Code." *Id.* at 3. Regardless, this does not affect the Court's personal jurisdiction inquiry under the Due Process Clause, as Oklahoma's long-arm statute "permits the exercise of any jurisdiction that is consistent with the United States Constitution." *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

[2] The Court finds that—and Plaintiff concedes—it does not have general jurisdiction over Defendant NCA. Doc. 8, at 10.

1417 (10th Cir. 1988)) (internal quotations omitted) ("The sufficiency of a defendant's contacts must be evaluated by examining the defendant's conduct and connections with the forum state to assess whether the defendant has purposely avail[ed] itself of the privilege of conducting activities within the forum state.").

Plaintiff argues that the following facts support specific jurisdiction over Defendant NCA. "NCA is a corporation whose sole purpose is to obtain donations from individuals and entities throughout the United States and then distribute those funds to an array of projects." Doc. 8, at 13 (quoting www.nationalcommunityadvancement.org/about/, web address no longer active). Since 2013, NCA has continuously registered as a charitable organization with the Oklahoma Secretary of State and contracted with a professional fundraiser—first Defendant Courtesy Call, Inc. and then, following a name change, Donor Relations, LLC—registered to solicit funds in Oklahoma.[3] *See* Docs. 18-2 through 18-8. Those fundraisers each designated various "professional fundraisers who will be involved in the solicitation of contributions for charitable organization" in Oklahoma. Doc. 18-6, at 2, 4 (Courtesy Call Inc., 2016–17, thirty solicitors); Doc. 18-7, at 2, 6 (Donor Relations, LLC, 2016–17, twenty-two solicitors); Doc. 18-8, at 2, 6 (Donor Relations, LLC, 2017–18, forty-eight solicitors). NCA's 2016 registration and 2017 renewal indicate that it is doing business as ("dba") "Breast Cancer Assistance Fund." *See* Doc. 18-3, at 2; Doc. 18-4, at 2. NCA also relies solely on its professional fundraiser for telephone and direct mail solicitation. Doc. 18-4, at 2, 7. Plaintiff asked NCA, which most recently reported $72,000

---

[3] NCA initially registered as "National Police Association, Inc." in 2013 and then changed its name to "National Community Advancement, Inc" upon registration renewal in 2016. *See* Doc. 18-2; Doc. 18-3; Doc. 18-4.

in contributions received, to "[i]dentify each and every individual located in Oklahoma whom [NCA], or any entity on [its] behalf, has solicited since NCA first started using the term BREAST CANCER ASSISTANCE FUND." Doc. 18-5, at 2; *see* Doc. 18-4, at 3. NCA responded that it "is not aware of any such individuals."[4] Doc. 18-5, at 3.

Plaintiff's argument boils down to this—NCA "*intended* its professional fundraiser . . . to use the [Breast Cancer Assistance Fund] Mark to solicit donations from Oklahoma residents," this trademark suit arises out of those potential Oklahoma contacts, and therefore the Court has personal jurisdiction over NCA. Doc. 18, at 6. But the Court disagrees. Just because NCA exhibited an intent to solicit funds in Oklahoma does not mean it actually did so. For NCA to "direct[] [its] *activities* at residents of the [Oklahoma] forum" in satisfaction of the minimum-contacts standard, NCA must actually maintain *activities*, or fundraising contact with Oklahoma residents while using the mark. *Intercon*, 205 F.3d at 1247 (10th Cir. 2000). Plaintiff has failed to show that NCA has (1) a physical presence in Oklahoma, (2) employees or contractors in Oklahoma, (3) raised funds from Oklahoma, or even (4) placed fundraising calls or sent mailers to Oklahoma. *See* Responses of NCA to Plaintiff's Jurisdictional Discovery Requests, Doc. 18-5.

To cure these insufficiencies, Plaintiff argues that NCA is merely "not aware" of any Oklahoma solicitation—which does not mean that NCA never solicited Oklahomans

---

[4] Plaintiff takes issue with Defendant NCA's refusal to identify the location of its depository accounts or entities it uses to manage its funds. *See* Doc. 18, at 8 n.3 (citing Doc. 18-5, at 4). Plaintiff could have sought an order compelling production during the jurisdictional discovery period and explained why such information could yield relevant jurisdictional evidence. Plaintiff declined to do so, and the Court declines to infer anything against NCA for its response. *See* Doc. 18-5, at 4 ("NCAI states that there are no such institutions in Oklahoma. NCAI objects to providing any additional information in response to this request because it is not relevant to determining whether NCAI is subject to personal jurisdiction in Oklahoma.").

for funds—and the Court must resolve "all factual disputes" in Plaintiff's favor when determining whether Plaintiff made the proper prima facie showing. Doc. 18, at 6–7 (quoting *AST Sports Science, Inc. v. CLE Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008)). However, that argument presupposes Plaintiff has met its burden. *See Behagen*, 744 F.2d at 733. Because Plaintiff has not presented enough facts to establish personal jurisdiction over NCA, there is simply nothing for the Court to construe in Plaintiff's favor.

Accordingly, the Court finds that it lacks personal jurisdiction over Defendant NCA for Plaintiff's failure to show minimum contacts. Alternatively, even if Plaintiff could show minimum contacts, the Court's exercise of personal jurisdiction over NCA "would offend traditional notions of 'fair play and substantial justice.'" *Intercon*, 205 F.3d at 1247 (quoting *Burger King Corp.*, 471 U.S. at 476). Defendant's Motion to Dismiss (Doc. 6) is GRANTED, and Plaintiff's claims against Defendant NCA are DISMISSED WITHOUT PREJUDICE.[5] Further, the Court orders Plaintiff to SHOW CAUSE by May 21, 2018, why Defendant Courtesy Call should not be dismissed for lack of service under Fed. R. Civ. P. 4. The record reflects that summons was issued, but without proof of service. *See* Doc. 3.

IT IS SO ORDERED this 14th day of May, 2018.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[5] Regardless of what Plaintiff believes that "judicial economy requires," the Constitution requires dismissal for lack of personal jurisdiction over Defendant NCA. *See* Doc. 18, at 10–11. The Court cannot transfer a case in which it lacks personal jurisdiction over a defendant.